J-S24014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF R.L., (MINOR CHILD) | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.L.-K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1550 WDA 2016 |

Appeal from the Order Entered September 13, 2016
In the Court of Common Pleas of Washington County
Orphans' Court at No(s):  63-16-0278

| | | |
|---|---|---|
| IN RE: ADOPTION OF R.L., (MINOR CHILD) | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.L-K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1551 WDA 2016 |

Appeal from the Order Entered September 13, 2016
In the Court of Common Pleas of Washington County
Orphans' Court at No(s):  63-16-0277

| | | |
|---|---|---|
| IN RE: ADOPTION OF O.L., (MINOR CHILD) | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R. L.-K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1552 WDA 2016 |

Appeal from the Order Entered September 13, 2016
In the Court of Common Pleas of Washington County
Orphans' Court at No(s):  No. 63-16-0273

J-S24014-17

BEFORE: PANELLA, J., STABILE, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 18, 2017**

R.L.-K. ("Father") appeals from the orders entered on September 13, 2016, terminating his parental rights to his children, twin sons, R.L. and R.L., (born in July 2011); and daughter, O.L., (born in October 2012) (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b).[1] We affirm.

In its opinion, the trial court set forth the factual background and procedural history of this appeal, including describing Mother's involvement as it is important to Father's claims. **See** Trial Court Opinion, 12/2/16, at 1-5.[2]

_____

* Former Justice specially assigned to the Superior Court.

[1] The trial court terminated the parental rights of the Children's mother, V.C. ("Mother"). Mother has not filed an appeal from the termination of her parental rights to the Children, nor is she a party to the instant appeal.

[2] In its opinion entered with the termination orders, the trial court noted that Mother has five children who were subjects of the termination proceedings. Only the three children at issue here were fathered by Father, however. Their two siblings who were subjects of the evidentiary hearing are not subjects of this appeal. C.R. is the father of K.R., a female born in September 2008, and K.C., a male born in October 2010, who is blind and autistic. **See** N.T., 5/24/16, Vol. I, at 14. In addition, Mother and Father had a male baby, R.L., born in December 2015, who is not part of these proceedings. **See** Trial Court Opinion, 9/13/16, at 1-2; **see also** N.T., 5/24/16, Vol. I, at 14.

- 2 -

On March 2, 2016, Washington County Children and Youth Social Services Agency ("CYS" or "the Agency") filed a petition to involuntarily terminate Father's parental rights with regard to each of the Children. On May 24, 2016, June 21, 2016, and June 22, 2016, the trial court held evidentiary hearings on the termination petitions. Mother and Father were present and represented by counsel. C.R., the father of two of Mother's children, did not appear. The Children were represented by a Guardian *ad Litem* ("GAL"). CYS, Mother, Father, and the GAL submitted suggested findings of fact and conclusions of law to the trial court.

The trial court stated its findings of fact with regard to the evidentiary hearings as follows.

> CYS first became involved with this family in 2008. The [C]hildren were previously adjudicated dependent and the case subsequently successfully closed in 2013. In January of 2015, the case was opened again after CYS received a report that Mother was using cocaine and not caring for the [C]hildren properly. The [m]other accepted voluntary services. On April 9, 2015, CYS was asked by the police to come to the home. The [m]other and [f]ather were engaged in a verbal domestic dispute; when the police arrived, the [m]other appeared under the influence and the [f]ather was being aggressive. The house was in poor condition. The [C]hildren were removed from the home and have been in placement since. The [C]hildren were adjudicated dependent on April 30, 2015. The [C]hildren were initially placed with the [f]ather's mother; they were removed in July of 2015 due to the grandmother's positive drug test. [K.C.] was placed with [D.P.], [Father's] aunt and foster mom. The other four children were placed in the foster home of [D. and M. C.], where they have remained.
>
> At the dependency hearing, the Juvenile Court judge ordered the Mother and both [f]athers to obtain a drug and alcohol evaluation and follow through with any recommended treatment,

to obtain a mental health evaluation and follow through with any recommended treatment, and to participate in a parenting program and to maintain stable housing.

[C.R.], the father of the two oldest children, has had no contact with his children since they have been in placement. When the children were placed, CYS attempted to contact [C.R.] and were unable to do so. They spoke with [C.R.'s] mother, who told them [C.R.] wanted nothing to do with the children or with CYS. [C.R.] has no relationship with the children.

Recognizing the special needs of [K.C.] and the good care that [D.P.] is providing and acknowledging the strong bond between [D.P.] and [K.C.], the [m]other has voluntarily relinquished her parental rights to [K.C.]. [D.P.] is supportive of continued contact between [K.C.] and the [m]other[,] and maintains a close relationship with the foster family and with [K.C.'s] four siblings. The baby [R.L.] is also placed with Ms. [P.]

Since the children were removed from her care in April of 2015, the [m]other has engaged in the services asked of her but has not successfully completed any of them. For drug and alcohol treatment, the [m]other initially attended Wesley Spectrum. In July of 2015, she began a parenting program through Justice Works. Mother was evicted in June of 2015 and was homeless until February 2015. In August of 2015, Mother moved to Florida, hoping to get housing and employment and wanted to have the [C]hildren placed with her there. She returned to Pennsylvania in early October. In the interim, the drug and alcohol and parenting program had discharged her for non-compliance. The [m]other and [f]ather obtained housing together in February of 2016. It is a two[-]bedroom apartment. The [m]other and [f]ather's relationship appears to be stable and close.

The [m]other obtained a mental health evaluation in March of 2016. Mother was asked to participate in an interactional evaluation with the [C]hildren. It was initially scheduled for November 2015 and December of 2015[,] and Mother failed to attend. She finally met with Dr. Rosenblum on March 18, 2016. Dr. Rosenblum reported that Mother displayed patience with the [C]hildren and that the [C]hildren were happy to see her and have an attachment with her. He also reported that Mother provided no structure during this time together, did not initiate

any play or exchange with the [C]hildren and lacked focus. Dr. Rosenblum found the [C]hildren to be very challenging with significant behavior issues and the [m]other failed to acknowledge or understand any of the [C]hildren's issues. Dr. Rosenblum supported the goal of adoption; he opined that the [C]hildren have already experienced the grief and loss of separation from their mother[,] and no substantial harm would be caused by a termination at this time.

After Mother returned from Florida, she again began parenting services with Justice Works but was non-compliant and discharged in February 2016 with minimal progress noted. She restarted services with them at the direction of Juvenile Court on March 27, 2016[,] and has been participating with the program two times a week at her home.

Mother received a mental health evaluation on March 8, 2016. She was recommended to participate in a dual diagnosis program (drug and alcohol and mental health). The [m]other denies having a drug problem and denies the use of illegal drugs, except for trying cocaine with a friend in January 2015. Since March 2015, CYS has tested 17 times; three times the [m]other has refused, which is considered a positive test. The last refusal was February 24, 2016.

The [f]ather admits to a history of opiate dependency. He participated in an inpatient program through Greenbriar in September of 2015 and was successfully discharged to outpatient treatment with Wesley Spectrum. He now is in treatment with Freedom Health Care since February 2016. There are no reports of relapse. Father is receiving Suboxone treatment. His counselor reports that he is doing well and taking responsibility and is hopeful yet guarded on his prognosis. Father has not tested positive for opiates. He has tested positive for marijuana twice.

The [f]ather did not participate in the interactional evaluation with Dr. Rosenblum. Father did not participate in the Family Group Decision Making meeting offered by CYS. Father was working with Justice Works in the parenting program in the fall of 2015. When Mother returned from Florida, Father became non-compliant and was discharged in November 2015. He has begun services again with Justice Works in April 2016.

The visits between the [C]hildren and Father go well. The [f]ather is active and involved with the [C]hildren. The visitation aide reported that the children are very affectionate with Father and that they interact well. The twins have had issues with food and will gorge themselves. The parents have been asked to bring to bring healthy snacks to visits, but they continue to bring only Oodles of Noodles and candy.

Trial Court Opinion, 9/13/16, at 2-5.

At the conclusion of the hearing, the trial court found clear and convincing evidence to terminate Father's parental rights to the Children. Father timely filed notices of appeal with concise statement of errors complained of on appeal pursuant to Pa.R.A.P 1925(a)(2)(i) and (b) with regard to the orders terminating his parental rights to each of his three children. This Court, acting *sua sponte*, consolidated the appeals.

In his brief on appeal, Father raises the following issues:

I. Whether the trial court improperly terminated Father's parental rights when evidence was presented that Father had made significant efforts to overcome his drug addiction and to remedy the conditions which led to the removal of the Minor Children and, therefore, it was reasonably possible that the conditions which led to the removal of the Minor Children would be remedied by Father so that he could be reunited with the Minor Children[?]

II. Whether the trial court improperly terminated Father's parental rights when evidence was presented that Father has a close bond with the Minor Child and that the Minor Child would suffer detrimental harm if the parent-child bond were severed[?]

Father's Brief, at 7.

Father argues that the trial court erred in terminating his parental rights under § 2511(a) and (b) of the Adoption Act. He contends that the

- 6 -

trial court failed to recognize the significant efforts that he made, before and during the termination proceedings, to overcome his addiction to drugs and to remedy other conditions that necessitated the removal of the Children. Father also asserts that the trial court erred in finding a lack of a strong bond between him and the Children and/or that termination of that bond would not be detrimental to the Children given the "contradictive and incomplete evidence" presented by the Agency on this issue. *See* Father's Brief, at 13.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id*.; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id*.; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id*.

> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other

hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, 650 A.2d 1064, 1066 (Pa. 1994).

**In re Adoption of S.P.**, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **See In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained that

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

**Id**. (quoting **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any *one* subsection of § 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will focus on subsections (a)(2) and (b), and review the evidence concerning Father and Mother together, as did the trial court, as it is important to determining whether the termination of Father's parental rights was warranted. Section 2511(a)(2) and (b) provides as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

To satisfy the requirements of § 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under § 2511(a)(2), due to parental incapacity that cannot be

remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. ***See In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002).

Here, in its opinion, the trial court stated the following with regard to § 2511(a):

> "Parental duty is best understood in relation to the needs of a child.  A child needs love, protection, guidance and support … parental obligation is a positive duty which requires affirmative performance … parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life." ***In Re: Burns***, 474 Pa. 615, 379 A.2d 535, 540 (1977).  The [C]hildren have been out of the care of the parents for over one year. Neither parent is performing any day-to-day parental duties. Only during visitation do the parents have any responsibilities for their children. The visitation has been limited to supervised contact for a few hours per week.  The [C]hildren were removed from the parents due to drug and alcohol abuse, ongoing domestic conflict, poor housing and inadequate parenting abilities. When children are placed outside of the home by the dependency court, the parents have a duty to work towards the return of the [C]hildren by cooperating with CYS to obtain the services necessary to become capable of performing parental responsibilities. ***In Re: G.-P.-R.***, 851 A.2d 967 (Pa. Super. 2004). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." ***In the Interest of A.L.D.***, 797 A.2d 326 (Pa. Super. 2002).
>
> The [m]other has not worked for the return of her four children with any haste. The [m]other started services, then became homeless, moved to Florida, returned, [and] remained homeless when a women's shelter was available and could assist with services.  For one year after the [C]hildren's placement, the [m]other failed to complete any of the services asked of her. Only since March of 2016 has she been in services with any regularity. The [m]other's overall parenting ability is marginal at best.  She has failed to recognize any of the behavior and emotional problems of the four children, stating that none of those behaviors existed when they were in her care. However,

Dr. Rosenblum's diagnoses of the [C]hildren belie that contention. The [C]hildren have been subjected to extreme neglect. When Mother was caring for five children, one of whom is blind and [requires] total care, understandably she was overwhelmed, but she sought no assistance and did not adequately attend to her children's needs.She received parenting education when the case opened earlier and again in 2015 and now again in 2016. She has yet to successfully complete a parenting program, a drug and alcohol program, nor is she receiving regular mental health treatment. The fact that the [C]hildren have been out of the home for a year and the fact that Mother is again needing parenting classes support this [c]ourt's finding that the conditions that led to removal cannot be remedied by the [m]other. These four children are placed together and are happy and bonded with their foster family. They all have special needs which are being provided for by the foster family. The [C]hildren recognize their [m]other and have a bond with her, but it is not a close one. None of the [c]hildren have [sic] expressed a desire to live with her; in fact, they specifically expressed to the CASA [Court-Appointed Special Advocate] a desire not to be with her. She has been reportedly mean to them during visits, getting frustrated and yelling. The [C]hildren have been out of their home for over a year. They express a desire to remain in their current foster care home. They have a strong attachment to the foster parents who desire to adopt them and have shown a clear ability to parent them in a positive nurturing manner, dealing with their behavior and emotional issues appropriately. The [c]ourt finds that there will be no negative effect on the [C]hildren by severing the bond between the [m]other and the [C]hildren and that the termination best serves the needs and welfare of the [C]hildren.

For the reasons set forth above, the [c]ourt finds that CYS has established by clear and convincing evidence that the [m]other's rights should be terminated pursuant to 23 Pa.C.S.A. §2511(a)(1), (2) and (5) and that[,] pursuant to §2511(b), the termination of the Mother's rights will best serve the needs and welfare of the [C]hildren.

The [f]ather similarly has not acted with requisite swiftness in order to have his children returned to him. While he has been successful in drug and alcohol treatment since September of 2015, he has just recently restarted the parenting program and is waiting to begin an anger management program. He had

completed much of the parenting program with the [C]hildren when the [m]other was in Florida. When she returned, however, Father backed off and essentially abandoned his efforts of being reunited with his children. He has had stable housing only since February of 2016. The conditions that led to the removal of the [C]hildren have not been remedied.

Trial Court Opinion, 9/13/16, at 5-9.

In another opinion, the trial court stated as follows:

The [C]hildren were adjudicated dependent in April 30, 2015 and it was clear that the Father's (and Mother's) incapacity, neglect or refusal caused the children to be without essential parental care, thus satisfying the first two elements. The issue was whether this incapacity, neglect or refusal could be remedied by the [f]ather. As stated, the [C]hildren were removed due to drug and alcohol issues, domestic conflict, inadequate parenting abilities and poor housing. At the time of the filing of the petition, CYS was working with the family for over a year before the petitions to terminate were filed. There was a previous involvement with the family when the [C]hildren were placed in foster care and eventually returned to the parents. (T.T. Vol. I, p. 17) The [f]ather's efforts to remedy all of the conditions that led to the removal of the [C]hildren were insufficient. He did not do anything for four months except visit with the [C]hildren; then he began a drug treatment program which was ongoing and began a Suboxone treatment program in early 2016. At the time of the hearings, Father had yet to complete a parenting program or an anger management program. The [f]ather obtained housing just weeks before the petition was filed and just reconciled with Mother. The incapacity of the [f]ather caused the [C]hildren to be placed in foster care for extended periods of time in these children's young lives. The [c]ourt found that providing Father with additional time was not likely to remedy the condition and causes of his incapacity.

Trial Court Opinion, 12/2/16, at 7-8.

The termination of Father's parental rights to the Children is warranted pursuant to subsection (a)(2), as Father lacks parental capacity, and the evidence showed that he will be unable to remedy that situation within a

reasonable period of time, if ever. As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we find no abuse of the trial court's discretion in finding that Father's parental rights should be terminated under § 2511(a)(2).

Next, we address § 2511(b). We have explained that the focus in terminating parental rights under subsection (a) is on the parent, but it is on the *child* pursuant to subsection (b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under subsection (b), our Supreme Court stated the following:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In its opinion, the trial court stated the following with regard to subsection (b):

> The issue of [§]2511(b) is more difficult. The [C]hildren have a bond with their father. Credible testimony has been offered that the [f]ather and the [C]hildren interact well with each other during the visits. The [f]ather is able to direct them; he

- 13 -

recognizes their behavior and emotional issues and deals with them appropriately. However, the strength of that bond has diminished over time. Ms. Gorman, the CASA, testified credibly that the [C]hildren want to live with their foster parents, that their mom and dad were mean and did not want to live with them. The [f]ather did not participate in the interactional evaluation that was set up specifically to address this issue.

While Father offered an excuse of sleeping in and failing to confirm his need for transportation, he also expressed mistrust of the use of a psychologist selected by CYS. The [c]ourt finds that[,] while a bond exists, severing the bond will not cause significant harm as the [C]hildren have already experienced that loss. The [C]hildren desire to remain with the foster family. The Guardian *ad Litem* supports the termination as to all of the parents.

In conclusion, the [c]ourt finds that CYS has proven by clear and convincing evidence that the [f]ather has failed to perform his parental duties for at least six months ([§2511(a)(1)]), that the [f]ather has shown an incapacity which has caused the [C]hildren to be without essential parental care ([§2511(a)(2)]) and that the best interest of the [C]hildren will be served by the termination of his parental rights (§2511(b)).

Trial Court Opinion, 9/13/16, at 9-10.

In another opinion, the trial court stated the following:

The [C]hildren have a bond with their father. Credible testimony was offered that the Father and the [C]hildren interact well with each other during the visits. The [f]ather was able to direct them; he recognized their behavior and emotional issues and dealt with them appropriately. However, the strength of that bond has diminished over time. Ms. Gorman, the Court Appointed Special Advocate (CASA), testified credibly that the [C]hildren want to live with their foster parents, their mom and dad were mean and they did not want to live with them. (T.T. Vol. II, pp. 89-90) The [f]ather did not participate in the interactional evaluation that was set up specifically to address this issue. While Father offered an excuse of sleeping in and failing to confirm his need for transportation, he also expressed mistrust of the use of a psychologist selected by CYS. (T.T. Vol. IV, p. 114) The [c]ourt found that while a bond existed, severing

the bond would not cause significant harm as the [C]hildren already experienced that loss. The [C]hildren desired to remain with the foster family. The Guardian *ad Litem* supported the termination as to Father. (Proposed Findings of Fact and Conclusions of Law filed by Attorney Renee Colbert [GAL] on July 14, 2016)

\* \* \*

Based upon the totality of the circumstances, the [c]ourt found that CYS proved by clear and convincing evidence that the [f]ather failed to perform his parental duties for at least six months [§2511(a)(1)], that the [f]ather showed an incapacity which has caused the [C]hildren to be without essential parental care [§2511(a)(2),] and that the best interest of the [C]hildren was served by the termination of his parental rights (§2511(b).)

Trial Court Opinion, 12/2/16, at 8-9.

When evaluating a parental bond, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, subsection (b) does not require a formal bonding evaluation. **See In re Z.P.,** 994 A.2d 1108, 1121 (Pa. Super. 2010). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." **In re K.Z.S.**, 946 A.2d 753, 762 (Pa. Super. 2008) (citation omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis:

concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be

- 15 -

reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent … Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in [and] of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763-764 (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

Our Supreme Court has observed that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *In re: T.S.M.*, 71 A.3d at 267 (quoting *In re K.K.R.-S.*, 958 A.2d at 535). The Supreme Court instructed, "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *In re: T.S.M.*, 71 A.3d at 267 (quoting *In re*

*Involuntary Termination of C.W.S.M.*, 839 A.2d 410, 418 (Pa. Super. 2003) (Tamilia, J. dissenting)).

We have explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *See In re Z.P.*, 994 A.2d at 1121. Further, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *See In re Adoption of S.P.*, 47 A.3d at 826-27. There was sufficient, competent evidence in the record for the trial court to find the grounds for termination of parental rights under § 2511(a)(2), due to parental incapacity that cannot be remedied. There was also sufficient, competent evidence in the record for

the trial court to find that the Children's best interests are served by their foster parents, and that no bond exists between the Children and Father such that the Children would suffer permanent emotional harm from the termination of Father's parental rights. We, therefore, affirm the orders terminating Father's parental rights with regard to the Children under § 2511(a)(2) and (b).

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2017